FILED
United States Court of Appeals
Tenth Circuit

April 4, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JOHN ROSS STENBERG,

Petitioner - Appellant,

v.

DONALD LANGFORD,

Respondent - Appellee.

No. 23-3165
(D.C. No. 5:22-CV-03308-JWL)
(D. Kan.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **TYMKOVICH**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Petitioner John Ross Stenberg, a Kansas state prisoner proceeding pro se,[1] seeks a certificate of appealability ("COA") to appeal the District of Kansas's denial of his petition for relief under 28 U.S.C. § 2254. Mr. Stenberg was convicted by jury of rape, aggravated criminal sodomy, and aggravated indecent liberties with two children. *State v. Stenberg*, 2017 WL 4455307, *1–*2 (Kan. Ct. App. Oct. 6, 2017) (unpublished) (*Stenberg I*), *rev. denied*, (Kan. April 27, 2018). On direct appeal, the Kansas Court of

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Because Mr. Stenberg is pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

Appeals affirmed his convictions. *Id.* at *1. The Kansas Supreme Court denied Mr. Stenberg's petition for review.

Mr. Stenberg then sought postconviction relief, which the state district court denied after an evidentiary hearing. *Stenberg v. State*, 2022 WL 570830, at *1 (Kan. Ct. App. Feb. 25, 2022) (unpublished) (*Stenberg II*), *rev. denied*, (Kan. Sept. 30, 2022). The Kansas Court of Appeals affirmed the denial, *id.*, and the Kansas Supreme Court denied Mr. Stenberg's petition for review.

On December 21, 2022, Mr. Stenberg filed a habeas petition pursuant to § 2254 in the United States District Court for the District of Kansas asserting two grounds for relief: (1) ineffective assistance of trial counsel and (2) involuntary confession. The federal district court denied Mr. Stenberg's claims on the merits and declined to issue a COA. Mr. Stenberg now seeks a COA from this court. The state declined to file a response.

We deny Mr. Stenberg's application for a COA and dismiss this matter.

## I.     BACKGROUND

Mr. Stenberg was charged with one count of rape, two counts of aggravated criminal sodomy, and one count of aggravated indecent liberties with a child, stemming from repeated acts of sexual abuse with his two stepdaughters, who were both under the age of six. *Stenberg I*, 2017 WL 4455307, at *1–*2. The stepdaughters were removed from the home of their mother and Mr. Stenberg in January 2014 by the Kansas Department for Children and Families and placed with a licensed foster parent. *Id.* at *1. About four or five months later, the two stepdaughters disclosed Mr. Stenberg's abuse to

2

the foster parent, who then took the girls to a police station for forensic interviews. *Id.* Senior Special Agent Bethanie Popejoy of the Kansas Bureau of Investigation interviewed the girls separately on May 16, 2014, and the interviews were recorded. *Id.* Three days later, Undersheriff Jeff Sharp interviewed Mr. Stenberg about his stepdaughters' statements. *Id.* at *2. Mr. Stenberg was already in custody serving a sentence on an unrelated matter, and he waived his *Miranda*[2] rights. *Stenberg II*, 2022 WL 570830, at *1. Upon conclusion of the approximately two-hour interview, Mr. Stenberg verbally admitted to the criminal offenses and then signed a written confession "in which he admitted that he twice 'placed [his] soft penis against [A.P.'s] lips,' that he 'rubbed [his] soft penis against [K.P.] when [he] awoke from sleeping with no clothes on,' and that he 'rubbed it against her vagina.'" *Stenberg I*, 2017 WL 4455307, at *2 (alterations in original). A jury found Mr. Stenberg guilty of all counts. *Id.* The trial court sentenced Mr. Stenberg to life in prison with no possibility of parole during the first twenty-five years on each of the four counts. *Id.*

In his direct appeal before the Kansas Court of Appeals, Mr. Stenberg argued that the trial court erred by (1) denying his motion to suppress the oral and written confessions on account of Undersheriff Sharp's allegedly coercive tactics, (2) not providing the jury with an instruction for the lesser-included offense of attempted rape, and (3) sentencing him to lifetime post-release supervision. *Id.* The Kansas Court of Appeals vacated the lifetime post-release supervision imposed by the trial court, but

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

otherwise affirmed the judgment and sentence, concluding the state district court did not err in admitting Mr. Stenberg's confession or clearly err in declining to instruct the jury on the lesser-included offense of attempted rape. *Id.* at *3–*13. The Kansas Supreme Court denied Mr. Stenberg's petition for review.

In his motion for state postconviction relief before the trial court, Mr. Stenberg argued counsel was ineffective for the alleged failure to (1) investigate witnesses, (2) secure and call an expert witness, (3) perform certain functions pre- and post-trial, and (4) prepare Mr. Stenberg to testify in his own defense. Mr. Stenberg and his trial counsel, Peter Antosh, testified in an evidentiary hearing before the trial court on this postconviction motion. The trial court found Mr. Antosh to be a credible witness but did not find Mr. Stenberg credible. The trial court denied Mr. Stenberg's postconviction motion, concluding that Mr. Stenberg did not establish that Mr. Antosh performed deficiently or that Mr. Stenberg suffered any prejudice even assuming Mr. Antosh had performed deficiently.

The Kansas Court of Appeals affirmed the trial court's denial of Mr. Stenberg's motion for postconviction relief. *Stenberg II*, 2022 WL 570830, at *1. The Kansas Court of Appeals held that Mr. Stenberg showed no deficiency in Mr. Antosh's preparing Mr. Stenberg to testify at trial. *Id.* at *5. The Kansas Court of Appeals identified some potential deficiencies in Mr. Antosh's failure to contact witnesses who may have served as character witnesses or who may have testified that Mr. Stenberg was never left alone with his stepdaughters, but it held there was no prejudice because of the overwhelming testimony that Mr. Stenberg was alone with his stepdaughters when he abused them. *Id.*

4

at *5–*7. The court also noted some potential deficiencies in Mr. Antosh's failure to consult an expert concerning the stepdaughters' victim statements but explained there was no prejudice due to Mr. Stenberg's confession. *Id.* at *7–*8. Finally, the court expressed some concerns about Mr. Antosh's failure to move for a downward departure at sentencing but held there was no prejudice because Mr. Stenberg identified no mitigating evidence that might have persuaded the trial court to reduce his sentence. *Id.* at *8–*9. The Kansas Supreme Court denied Mr. Stenberg's petition for review.

Mr. Stenberg next filed a habeas petition in federal court, alleging (1) his trial counsel was ineffective for failing to properly prepare him to testify at trial, contact his proposed witnesses, secure an expert witness concerning the stepdaughters' testimony, and file a motion for a downward departure at sentencing; and (2) his due process rights were violated when Undersheriff Sharp used improper threats and promises concerning potential plea negotiations and made incorrect statements of law and fact during an interrogation to coerce him into confessing to the charged conduct. The District of Kansas denied Mr. Stenberg's habeas petition. It concluded that the Kansas Court of Appeals properly applied *Strickland v. Washington*, 466 U.S. 668 (1984), to his ineffective assistance of counsel claims and made no unreasonable determination of facts. The court further held that the Kansas Court of Appeals made no unreasonable factual determinations concerning Mr. Stenberg's involuntary confession claim, properly considered Undersheriff Sharp's challenged statements, made a reasonable determination that Undersheriff Sharp's statements to Mr. Stenberg regarding plea negotiations were improper threats rather than improper promises of leniency, and made no holding

contrary to or unreasonably applying clearly established federal law. The federal district court denied Mr. Stenberg's motion for an evidentiary hearing and denied a COA.

Mr. Stenberg now seeks a COA from this court, alleging primarily the same grounds for error brought in the federal district court.

## II.    DISCUSSION

### A.    Legal Standards

An appeal from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a [s]tate court" shall be taken to the court of appeals only if "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). For a circuit judge to issue a COA, the applicant must have "made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). District courts may deny habeas petitions based on the merits of the petitioner's claims or based solely on a procedural bar. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where a "district court has rejected the constitutional claims on the merits, the showing required [to obtain a COA] is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a state court has adjudicated a federal claim on the merits, a federal court can grant habeas relief only if the petitioner establishes the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable

6

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Pursuant to § 2254(d)(1), a state-court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state-court decision is an "unreasonable application" of Supreme Court law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. A federal court may not grant relief simply because it concludes in its "independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (quoting *Williams*, 529 U.S. at 411). The federal court may grant relief only where "the ruling [is] 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)).

Under § 2254(d)(2), "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Sharp v. Rohling*, 793 F.3d 1216, 1228 (10th Cir. 2015) (quoting *Wood v. Allen,* 558 U.S. 290, 301 (2010)). "If 'reasonable minds reviewing the record might disagree about the finding in question,' [a federal habeas court] defer[s] to the state court's determination." *Id.* (quoting *Brumfield v. Cain,* 576 U.S. 305, 314 (2015)). "But if

a habeas petitioner satisfies § 2254(d)(2), [a federal habeas court] proceed[s] to review the state court's determination de novo." *Id.*

### B.    Ground One: Ineffective Assistance of Counsel

In his first claim for relief, Mr. Stenberg alleges on appeal that his trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments by failing to (1) adequately prepare him to take the stand and testify, (2) contact witnesses Mr. Stenberg proposed, (3) hire an expert witness to evaluate the stepdaughters' victim statements, and (4) file a motion for a downward departure at sentencing.[3] The federal district court held that the Kansas Court of Appeals did not reach any conclusions contrary to or through unreasonable application of the *Strickland* framework, and accordingly denied habeas relief on these grounds. We hold that the federal district court's resolution of this claim is not reasonably subject to debate and accordingly deny a COA as to this claim.

"An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. "[E]rrors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ." *Williams*, 529 U.S. at 375; *see also Strickland*,

---

[3] Mr. Stenberg also asserts on appeal that his trial counsel "failed to have a reasonable and viable defense strategy" and "failed to put the prosecution to adversarial testing." Pet. at 2. Because these arguments vary from the arguments Mr. Stenberg raised before the District of Kansas, they are waived. *See Milton v. Miller*, 812 F.3d 1252, 1264 (10th Cir. 2016) (petitioners "cannot allege an ineffective-assistance claim and then usher in anything fitting under that broad category as the same claim" on appeal, as "[c]ounsel can perform ineffectively in myriad ways").

8

466 U.S. at 697 (describing "fundamental fairness" as the "central concern of the writ of habeas corpus").

The familiar two-prong standard from *Strickland* typically governs ineffective assistance of counsel claims. Under that standard, a defendant "must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby." *United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005). Regarding the second prong of *Strickland*, "to show that the outcome of his trial was prejudiced by counsel's error, the defendant must show that those 'errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687). Put another way, the prejudice prong of *Strickland* requires a defendant to demonstrate there was a "reasonable probability" of a more favorable outcome absent counsel's deficient performance. *Holder*, 410 F.3d at 654. This is a highly deferential standard designed to allow federal courts to interfere with state-court decisions only in cases of "extreme malfunctions in the state criminal justice systems" on issues of federal law. *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

After reviewing the record of the state-court proceedings, the federal district court concluded that the Kansas Court of Appeals' application of *Strickland* to Mr. Stenberg's claims was not contrary to or an unreasonable application of federal law. This conclusion is not reasonably subject to debate.

9

First, as to counsel's alleged failure to properly prepare Mr. Stenberg to testify in his own defense, the Kansas Court of Appeals explained that the state district court found (1) Mr. Antosh credibly explained to Mr. Stenberg during the course of their 11.3 hours of meetings prior to trial why he believed Mr. Stenberg should not testify in his own defense, (2) Mr. Stenberg expressed no issue with this advice, (3) Mr. Stenberg did not insist on testifying at trial, and (4) the trial court gave Mr. Antosh and Mr. Stenberg time to confer before Mr. Antosh presented Mr. Stenberg's case-in-chief, after which Mr. Stenberg confirmed on the record that he would not testify. *Stenberg II*, 2022 WL 570830, at \*5. Accordingly, the court of appeals held that Mr. Stenberg showed no deficiency. *Id.* No reasonable jurist would find it debatable or wrong that the federal district court correctly recognized the state-court decision as not contrary to clearly established federal law. *Cf. Harrington*, 562 U.S. at 110 ("[A]n attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities.").

Next, Mr. Stenberg claims his trial counsel acted ineffectively in not contacting potential defense witnesses. The Kansas Court of Appeals acknowledged that Mr. Antosh believed Mr. Stenberg's proposed witnesses would be character witnesses, and their testimony would accordingly open the door to the state presenting rebuttal evidence concerning Mr. Stenberg's criminal history, which may have harmed his case. *Stenberg II*, 2022 WL 570830, at \*5–\*6. But the Kansas Court of Appeals noted that at least three of Mr. Stenberg's proposed witnesses could have offered testimony that Mr. Stenberg was never alone with the stepdaughters, which would have undermined the

10

state's case. *Id.* at \*6. The court then explained that "[w]hile it is unrealistic to expect attorneys to investigate every potential witness throughout the case, the failure to contact these witnesses at all to discuss their potential testimony deprived [Mr.] Antosh of the ability to make a meaningful decision as to whether to call them at trial." *Id.* The Kansas Court of Appeals held, however, that Mr. Antosh's inaction did not necessarily affect the fairness of the trial, the ultimate question posed by *Strickland*, because "[a]s [Mr.] Antosh explained at the evidentiary hearing, none of these witnesses could meaningfully refute the abuse in light of [Mr.] Stenberg's confession." *Id.* The court also noted that the stepdaughters told of Mr. Stenberg being alone with them, which was corroborated by Mr. Stenberg's confession. *Id.* at \*7. The court accordingly rejected Mr. Stenberg's claim based on lack of prejudice. *Id.*

The federal district court concluded the Kansas Court of Appeals' decision was not contrary to clearly established federal law. Based on the evidence at trial of the stepdaughters' statements to their foster mother and Special Agent Popejoy indicating that Mr. Stenberg was alone with them when committing the abuse, no reasonable jurist would find the federal district court's decision debatable or wrong. *See Harrington*, 562 U.S. at 111–12 (under *Strickland*'s prejudice prong, "[t]he likelihood of a different result must be substantial, not just conceivable").

As to Mr. Stenberg's claim that his trial counsel was ineffective for not hiring an expert to review the stepdaughters' victim statements, the Kansas Court of Appeals discussed state precedent concerning when it would be unreasonable not to hire an expert to review a young sexual abuse victim statement to determine its reliability. *Stenberg II*,

11

2022 WL 570830, at *7. Ultimately, the Kansas Court of Appeals concluded that Mr. Antosh's decision may have been unreasonable and that the better choice would have been to hire an expert. *Id.* Given Mr. Stenberg's confession, however, the court held he was not prejudiced. *Id.* at *8. The court further explained, "after hearing of several consistent disclosures of sexual abuse, the jury learned that Stenberg himself admitted to the charged conduct." *Id.* Mr. Stenberg has not met his burden to show prejudice under *Strickland*, which requires that "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Finally, the Kansas Court of Appeals found some merit in Mr. Stenberg's claim that his trial counsel was ineffective for failing to file a motion for downward departure at sentencing, but it held there was no prejudice because "[Mr. Stenberg] offers no mitigating circumstance or evidence that would have supported a departure." *Stenberg II*, 2022 WL 570830, at *9. Accordingly, the Kansas Court of Appeals held "[Mr.] Stenberg cannot show any probability that the [state] district court would have departed or run his sentences concurrently—even if [Mr.] Antosh should have filed a departure motion." *Id.* Mr. Stenberg has not attempted to show that the state court made any unreasonable factual determinations in reaching this conclusion. Thus, Mr. Stenberg cannot meet the strict prejudice requirement under *Strickland*. *See Harrington*, 562 U.S. at 112.

None of the federal district court's conclusions concerning Mr. Stenberg's ineffective assistance of counsel claims are debatable or wrong. We therefore decline to issue a COA as to Mr. Stenberg's ineffective assistance claims.

### C.     Ground Two: Involuntary Confession

In his second claim for relief, Mr. Stenberg asserts he was coerced into giving an involuntary confession during his pre-arrest interrogation in violation of his Fifth and Fourteenth Amendment rights. The Kansas Court of Appeals denied relief as to this claim. *Stenberg I*, 2017 WL 4455307, at *2–*10. The District of Kansas held that the Kansas Court of Appeals made no unreasonable factual determinations in reviewing this claim, and did not reach any holdings contrary to or involving an unreasonable application of clearly established federal law. The federal district court's resolution of this claim is not reasonably subject to debate, and we deny a COA as to this claim.

To succeed in challenging a state court's factual determinations, a petitioner must show "that the [state court] based its decision on the factual error." *Frederick v. Quick*, 79 F.4th 1090, 1104 (10th Cir. 2023) (alteration in original) (quotation marks omitted), *petition for cert. filed*, (U.S. Mar. 4, 2024) (No. 23-6888). If (1) the state court "made the [challenged] finding in addressing only subsidiary issues" or (2) "other reasons supported the court's decision," "[t]he state court's decision is not based on a [challenged] finding." *Id.* (internal quotation marks omitted).

"'[T]he ultimate issue of "voluntariness" is a legal question,' but its determination is based on 'subsidiary factual questions.'" *Sharp*, 793 F.3d at 1226 (quoting *Miller v. Fenton,* 474 U.S. 104, 110, 112 (1985)). As a general matter, "[t]o determine whether a confession was voluntary, courts assess whether the suspect's 'will has been overborne and his capacity for self-determination critically impaired.'" *Id.* at 1233 (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973)). "Courts must consider the

'totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Id.* (quoting *Schneckloth,* 412 U.S. at 226). "The totality of the circumstances test does not favor any [factor over another]—it is a case-specific inquiry where the importance of any given factor can vary in each situation." *Id.*

The District of Kansas's denial of Mr. Stenberg's habeas petition on his involuntary confession claim is not subject to debate among reasonable jurists. Mr. Stenberg challenges the Kansas Court of Appeals' determinations concerning some subsidiary issues, but he does not challenge other rationales that independently support the Kansas Court of Appeals' conclusion that his confession was voluntary under the totality of the circumstances. *See Frederick*, 79 F.4th at 1104. In particular, Mr. Stenberg does not challenge before the federal courts how the Kansas Court of Appeals weighed the "timing of the 'inappropriate threats or misrepresentations of the law' in relation to the confession" and "the fact that [Mr. Stenberg's] inculpatory oral and written statements went beyond details provided by [Undersheriff] Sharp during the interrogation" in concluding that the confession was voluntary. ROA Vol. 1 at 211 (quoting *Stenberg I*, 2017 WL 4455307, at *9–*10). Furthermore, Mr. Stenberg did not challenge before the federal district court the Kansas Court of Appeals' conclusion that other circumstances favored a finding that the confession was voluntary, including his "ability to communicate with the outside world, his age, his intellect, his prior experience with the criminal justice system, [and] his ability to understand the English language." *Id.* at 211. Thus, Mr. Stenberg cannot show that the Kansas Court of Appeals' determination was "based on" the errors he challenges. *See Frederick*, 79 F.4th at 1104; *Sharp*, 793

14

F.3d at 1233. Accordingly, no reasonable jurist could find that the federal district court erred in deferring to the Kansas Court of Appeals' factual determinations as to the voluntariness of the confession. This is particularly so given that a federal habeas court must defer to the state court when "reasonable minds reviewing the record might disagree about the finding in question." *Sharp*, 793 F.3d at 1228 (quoting *Brumfield,* 576 U.S. at 314).

Mr. Stenberg claims that Undersheriff Sharp made an improper statement of law by convincing him that he would face a reduced sentence for confessing to "mild[er]" sex offenses, *see* Pet. at 23. The federal district court explained that the Kansas Court of Appeals found this to be a "close call" in terms of whether it was an improper coercive tactic because it was a legal misrepresentation, ROA Vol. I at 210. Nevertheless, the Kansas Court of Appeals found that this tactic did not detract from its ultimate conclusion that based on the totality of circumstances, Mr. Stenberg's statements were voluntary.

Mr. Stenberg also claims that his confession was coerced because he was threatened with harsher consequences if he did not confess. The federal district court acknowledged that the Kansas Court of Appeals also expressed concern about some threats made during Undersheriff Sharp's interrogation, but determined its concern was outweighed by other factors favoring a conclusion that the confession was voluntary. In particular, the federal district court noted that the Kansas Court of Appeals considered Undersheriff Sharp's allegedly coercive tactics together with the totality of the circumstances, *id.* at 211. The federal district court then explained that the Kansas Court of Appeals found "that although 'two of the interrogation tactics employed by

15

Undersheriff Sharp were coercive, . . . [Mr. Stenberg's] statements were voluntary and the product of free and independent will when considered in conjunction with all of the other circumstances surrounding the interrogation.'" *Id.* (quoting *Stenberg I*, 2017 WL 4455307, at *9).

Mr. Stenberg further claims that the Kansas Court of Appeals overlooked Undersheriff Sharp's false promise of leniency in determining that his confession was voluntary. In rejecting this contention, the federal district court examined the context in which Undersheriff Sharp allegedly promised leniency, quoting from the interrogation as follows:

> It's not a matter of if you did or if you didn't. It's a matter of you need to tell me what happened on your behalf. [Be]cause I really can't go to the prosecutor and tell him. If you have remorse about what happened, there's a chance that things are gonna [*sic*] be less than what they are now, because if we have to go and put those girls on the stand and—and put them through that . . . [sigh] . . . he's gonna [*sic*] request anything and everything he possibl[y] can plus the kitchen sink to throw at you. **If you accept this—that you made a mistake—and you man up to things, [the county attorney will] take a plea agreement on it.** At my recommendation. But if he sees I'm in here for two and three and four hours and you're not wanting to play ball . . . [shrugs].

ROA Vol. I at 214–15 (emphasis added) (first, second, third, fourth, and seventh alterations in original). The federal district court held that the Kansas Court of Appeals' view that this statement constituted an improper threat rather than an improper promise of leniency was a plausible reading of the exchange. The federal district court explained that "[t]he [Kansas Court of Appeals] simply characterized the statement as an improper threat rather than an improper promise of leniency" when it considered this statement alongside several "impermissible" statements made by Undersheriff Sharp during the

16

interrogation. *Id.* at 215. The federal district court also explained that "[w]hile [this] might not be the way this [c]ourt would have characterized the statement, the question is whether the [Kansas Court of Appeals'] characterization is plausible, and it is." *Id.* And when a state court gives a "plausible reading" of a recorded exchange, the federal courts cannot disturb the state court's corollary factual determination on § 2254(d)(2) review. *Frederick*, 79 F.4th at 1128. Accordingly, the federal district court concluded "to the extent that [Mr. Stenberg] assert[s] that the [Kansas Court of Appeals'] factual finding that there were no promises for leniency was erroneous and requires federal habeas relief, his argument is unsuccessful." ROA Vol. I at 215.

We agree with the District of Kansas and the Kansas Court of Appeals that Undersheriff Sharp made several concerning statements when interrogating Mr. Stenberg. But in a § 2254(d)(2) challenge, that is simply not enough to justify relief. A federal habeas court must "defer to the state court's factual determinations so long as reasonable minds reviewing the record might disagree about the finding in question." *Johnson v. Martin*, 3 F.4th 1210, 1218 (10th Cir. 2021) (quotation marks omitted). Because "other [unchallenged] reasons supported the [state] court's decision," namely, other factors in the totality of the circumstances analysis, the federal district court's resolution of this claim is not subject to debate, and we deny the COA. *Frederick*, 79 F.4th at 1104 (internal quotation marks omitted).

17

### III.    CONCLUSION

Because Mr. Stenberg fails to demonstrate that the district court's holdings are debatable or wrong, we DENY his request for a COA and DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge